UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEONDRE CASEY,                           Case No. 23-11900
                    Plaintiff,
v.                                       Brandy R. McMillion
                                         United States District Judge
STEES, GREASON,
MCCOLOUGH, and MANDY,                    Curtis Ivy, Jr.
                    Defendants.          United States Magistrate Judge
_____/

**REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT (ECF No. 18)**

## I.    PROCEDURAL HISTORY

Plaintiff Deondre Casey filed this *pro se* civil rights matter on August 4,

2023, against four Michigan Department of Corrections ("MDOC") employees,

and amended on January 26, 2024. (ECF Nos. 1, 13). On March 21, 2024, the

Defendants moved for summary judgment based on failure to exhaust

administrative remedies. (ECF No. 18). The motion is fully briefed. (ECF Nos.

21, 22). This case was referred to the undersigned for all pretrial matters. (ECF

No. 20).

For the reasons below, the undersigned **RECOMMENDS** that the motion

for summary judgment be **GRANTED**.

## II.   BACKGROUND

At the time of the events of this complaint, Plaintiff was incarcerated in the Macomb Correctional Facility ("MRF").  (ECF No. 13 at PageID.59).

Plaintiff went on suicide watch in April 2022, when a non-party corrections officer allowed him to keep his shoes on.[1]  (*Id*. at PageID.60-61).  On May 13, 2022, Defendants Lt. McCullough and Sgt. Mandy approached him and pointed tasers at his face, demanding that he remove his shoes.  (*Id*.).  Following a brief argument, Plaintiff complied and gave them his shoes.  (*Id*.).

Defendant Mandy returned later that day with five to seven other officers and a video camera.  (*Id*.).  He again asked Plaintiff for his shoes.  (*Id*.).  Plaintiff explained that he already gave them, but Mandy pepper sprayed him for noncompliance.  (*Id*.).  The officers assaulted Plaintiff and put him in restraints, and "tore . . . [his] observation gown off his body," escorting him, naked, to another holding cell.  (*Id*. at PageID.61-62).  Plaintiff was denied medical treatment for being pepper sprayed, and claims that Defendants Warden Steece[2] and Assistant Deputy Warden Greason "gave the order" to assault Plaintiff with pepper spray and deny him medical treatment.  (*Id.*).  He also claims that

---

[1] Allegations in a verified complaint have, for summary judgment purposes, the same force as those in an affidavit.  *Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993) (internal citations omitted).  Because Plaintiff filed a verified complaint, his allegations will be taken as evidence.

[2] Though Plaintiff refers to Defendant Steece as "Stees" in his original complaint, the Court will adopt the spelling "Steece," as it is used in Plaintiff's amended complaint and in Defendants' briefs.

Defendants Sgt. Miller and Corrections Officer Omoregha issued him two false misconduct tickets on May 3 and 13, 2022.  (*Id.* at PageID.63).

Plaintiff's Step I grievance, MRF-2206-1089-17B, was filed on May 18, 2022, and received on May 24, 2022.  (ECF No. 21, PageID.127).  He stated that Lt. McCollough and Sgt. Mandy took his clothes and shoes and pepper sprayed him, assaulted him, and denied him medical care.  (*Id.*).  Plaintiff moved to Ionia Correctional Facility ("ICF") on June 7, 2022.  (*Id.* at PageID.119).  His Step I grievance was rejected on June 22, 2022, but Plaintiff claims to have not received the rejection until August 21, 2022.  (*Id.*).

Plaintiff then filed a Step II grievance, MRF-2206-1089-28e, which was received on September 26, 2022.  (ECF No.18-3, PageID.114).  Once again, Plaintiff asserted the events in his Step I grievance, and also stated that another corrections officer allowed him to keep his shoes before the incident.  (*Id.*).  This grievance was rejected for being untimely.  (*Id.*).

Despite the Step II rejection for being untimely, Plaintiff pursued a Step III grievance, which was received on November 28, 2022.  (*Id.*).  Plaintiff stated that he did not receive the Step I rejection until after the ten-day response due date because of his transfer from MRF to ICF.  (*Id.*).  Even so, Plaintiff's Step III grievance was rejected as it was missing the Step I grievance and response.  (*Id.* at

PageID.113).  The Final MDOC Decision form for this grievance stated "MRF-22-06-1089-17b – Missing Step I grievance & response."  (*Id.*).

## III.    DISCUSSION

### A.    Standard of Review

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material if it might affect the outcome under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party."  *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

"The moving party has the initial burden of proving that no genuine issue of material fact exists. . . ."  *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); *cf.* Fed. R. Civ. P. 56(e)(2) (providing if a party "fails to properly address another party's assertion of fact," then the court may "consider the fact undisputed for purposes of the motion").  "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'"  *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*

*Corp.*, 475 U.S. 574, 587 (1986)).  The nonmoving party must "make an

affirmative showing with proper evidence in order to defeat the motion."

*Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also Lee v. Metro.*

*Gov't of Nashville & Davidson Cty.*, 432 F. App'x 435, 441 (6th Cir. 2011) ("The

nonmovant must, however, do more than simply show that there is some

metaphysical doubt as to the material facts, there must be evidence upon which a

reasonable jury could return a verdict in favor of the non-moving party to create a

genuine dispute.") (internal quotation marks and citation omitted).  In other words,

summary judgment is appropriate when "a motion for summary judgment is

properly made and supported and the nonmoving party fails to respond with a

showing sufficient to establish an essential element of its case. . . ."  *Stansberry*,

651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

That Plaintiff is *pro se* does not reduce his obligations under Rule 56.

Rather, "liberal treatment of *pro se* pleadings does not require lenient treatment of

substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir.

2006).  In addition, "[o]nce a case has progressed to the summary judgment stage, .

. . 'the liberal pleading standards under *Swierkiewicz [v. Sorema, N.A.*, 534 U.S.

506, 512-13 (2002)] and [the Federal Rules] are inapplicable.'"  *Tucker v. Union of*

*Needletrades, Indus. & Textile Emp.'s*, 407 F.3d 784, 788 (6th Cir. 2005) (quoting

*Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)).  The

Sixth Circuit has made clear that, when opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings and that a party's "status as a *pro se* litigant does not alter [this] duty on a summary judgment motion." *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010); *see also United States v. Brown*, 7 F. App'x 353, 354 (6th Cir. 2001) (affirming grant of summary judgment against a *pro se* plaintiff because he "failed to present any evidence to defeat the government's motion").

       B.    <u>Exhaustion under the PLRA</u>

Under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e *et seq.*, a prisoner may not bring an action "with respect to prison conditions under section 1983 of this title, or any other Federal law . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Congress enacted the provision to address the "outsized share" of prisoner litigation filings and to ensure that "the flood of nonmeritorious claims does not submerge and effectively preclude consideration of the allegations with merit." *Jones v. Bock*, 549 U.S. 199, 203-04 (2007). Put another way, the purpose of § 1997e(a) is to "reduce the quantity and improve the quality of prisoner suits[.]" *Porter v. Nussle*, 534 U.S. 516, 524 (2002). In addition, exhaustion "gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of [the agency's] procedures."

*Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (internal quotation marks and citation omitted).

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones*, 549 U.S. at 211. The prison's grievance process determines when a prisoner has properly exhausted his or her claim. *Id.* at 218 ("The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."). Even where a prisoner has made some attempts to go through the prison's grievance process, "[t]he plain language of the statute makes exhaustion a precondition to filing an action in federal court." *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999).

The prisoner "may not exhaust administrative remedies during the pendency of the federal suit." *Id.* (citations omitted); *see also Woodford*, 548 U.S. at 95 ("A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction. . . ."). That said, "the PLRA and Federal Rule of Civil Procedure 15 permit a plaintiff to amend his complaint to add claims that were exhausted after the commencement of the lawsuit, provided that the plaintiff's

original complaint contained at least one fully exhausted claim." *Mattox v. Edelman*, 851 F.3d 583, 595 (6th Cir. 2017).

Finally, "inmates are not required to specifically plead or demonstrate exhaustion in their complaints." *Jones*, 549 U.S. at 216. Instead, failure to exhaust administrative remedies is an affirmative defense under the PLRA. *Id.* As a result, defendants bear the burden of proof on exhaustion. *Surles v. Andison*, 678 F.3d 452, 456 (6th Cir. 2012) ("A PLRA defendant bears the burden of proving that a PLRA plaintiff has not exhausted his administrative remedies.").

C.    Grievance Procedures at MDOC

Pursuant to Policy Directive 03.02.130, dated March 18, 2019, the administrative remedies available at the MDOC are as follows. First, the inmate must attempt to resolve issues with the staff member involved within two business days of becoming aware of a grievable issue. (ECF 18-2, PageID.104, at ¶ Q). If the issues are not resolved within five business days, the inmate may file a Step I grievance using the appropriate form. (*Id.*). If the inmate is dissatisfied with the Step I disposition, or does not receive a response by ten business days after the due date, he or she may file a Step II grievance using the appropriate form. (*Id.* at PageID.106, at ¶ DD). Similarly, if the inmate is dissatisfied with the Step II response or does not receive a response by ten business days after the due date, the inmate may file a Step III grievance. (*Id.* at PageID.107, at ¶ HH). The matter is

fully exhausted after the disposition of the Step III grievance.  *Surles*, 678 F.3d at

455 ("A grievant must undertake all steps of the MDOC process for his grievance

to be considered fully exhausted.").

    D.   <u>Analysis</u>

Defendants claim that "MRF-1089 did not exhaust any claims because it was

rejected at Step II for being untimely . . . and it was rejected at Step III because

Casey did not provide the Step I grievance and response with the Step III appeal."

(ECF No. 18, PageID.95-96).

    a.   <u>Untimely Rejection</u>

A grievance may be rejected if it is filed in an untimely manner.  (ECF No.

18-2, PageID.102 ¶ J).  A grievance is "considered filed on the date received by the

Department."  (*Id.* at PageID.104, at ¶ T).  After a Step I grievance has been filed,

a prisoner must request a Prisoner Grievance Appeal and send the completed form

to the Step II Grievance Coordinator designated for the office being grieved within

ten business days after the response is due if he is dissatisfied with the Step I

disposition, or, if no response was received, within ten business days after the date

the response was due, including any extensions.  (*Id.* at PageID.106, at ¶ DD).

Extensions may be granted at the discretion of the Grievance Coordinator for a

Step I or II response, though it may not exceed 15 business days.  (*Id.* at

PageID.104, at ¶ T).  If there is a valid reason for a delayed grievance, such as a transfer, it may not be rejected.  (*Id.* at PageID.102, at ¶ J).

Plaintiff's Step I grievance was received May 24, 2022.  (ECF No. 21, PageID.127).  The response was due within 15 business days after receipt, June 14, 2022.  (ECF No. 18-2, PageID.105, at ¶ Z).  The grievance was returned to Plaintiff on June 24, 2022, which was past the date for a response.  (ECF No. 21, PageID.127).  Because the response was late, and no response was received within 15 days after the receipt of the grievance, Plaintiff had ten business days after the date the response was due to submit his Step II grievance form, June 24, 2022.  Plaintiff filed his Step II appeal form on September 26, 2022.  (*Id.* at PageID.128).  There is no evidence that he sought an extension.

Plaintiff claims that he transferred to ICF on June 7, 2022 and did not receive a response to this grievance until August 21, 2022.  (*Id.* at PageID.118-119).  He claims that he then sent his Step II grievance appeal, which was received on September 26, 2022.  (*Id.*).

A transfer may be a valid reason to file an untimely response.  (*Id.* at PageID.102, at ¶ J); *see also Coleman v. Gullet*, 2013 WL 2634851 (E.D. Mich. June 10, 2013) (court found that the "grievance should not have been rejected as untimely because he had 'a valid reason for the delay'" because plaintiff transferred and did not receive an appeal form as requested until after the

deadline).  But where a prisoner argued "that his transfer rendered the grievance process of his previous facility unavailable to him, [but] he did not take any steps to comply with the grievance process," he did not properly exhaust his claim. *Harp v. Hallett*, 2022 WL 17039315, at *3 (E.D. Mich. Nov. 17, 2022).  "[I]t is well-settled that a failure to timely grieve an issue, even if ultimately appealed through Step III, does not constitute exhaustion."  *Flentall v. Morey*, 2011 WL 6090156, at *6 (E.D. Mich. Aug. 25, 2011).  "When a prisoner fails to exhaust his administrative remedies and argues that his efforts to do so were thwarted," the Court looks at whether the prisoner's efforts to comply with the exhaustion policies were "sufficient under the circumstances."  *Harp*, 2022 WL 17039315, at *3 (citing *Napier v. Laurel Cty., Ky.*, 636 F.3d 218, 224 (6th Cir. 2011)).  "The Sixth Circuit requires some affirmative efforts to comply with the administrative procedures."  *Napier*, 636 F.3d at 224 (finding that the prisoner must do "*something*" to make an effort to exhaust) (emphasis original).

Plaintiff here states that he received the response to his grievance on August 21, 2022.  (ECF No. 21, PageID.128).  He appealed this response on September 26, 2022.  (*Id.* at PageID.119).  Though his transfer may have been a reason to excuse his untimely response, this response was filed almost one month after he received the MDOC's Step I response, and was not within the allotted time for a response. Plaintiff does not have any evidence of affirmative efforts he undertook to comply

with the response deadline.  In his response brief, Plaintiff says he sent kites to MRF to file an appeal but he provided no evidence of this.  (*Id.*); *see, e.g.*, *Young v. Jackson*, No. 12-12751, 2013 WL 8178397, at *8-9 (E.D. Mich. Nov. 13, 2013) (rejecting defendants' failure to exhaust argument where plaintiff provided copies of numerous letters requesting a Step II grievance appeal form from the appropriate grievance coordinator, but allegedly was not provided one); *Graham v. Chicowski*, No. 16-12258, 2017 WL 3097803, at *5 (E.D. Mich. Apr. 18, 2017) (finding that plaintiff raised a question of fact as to the "availability" of the grievance process where he provided copies of several letters he wrote and evidence demonstrating that his family made calls and wrote letters on his behalf to advance his grievance).  There is no other evidence to show Plaintiff made affirmative efforts to comply with administrative procedures in an effort to exhaust his remedies.  Given that Plaintiff's response was untimely, and he has no evidence to show affirmative efforts to comply with administrative procedures, Plaintiff has not properly exhausted his remedies.

  b. <u>Step III Rejection</u>

   Finally, Defendants state that not only was Plaintiff's grievance rejected as untimely at Step II, but he also did not provide the Step I grievance when filing at Step III.  (ECF No. 18, PageID.95-96).  Grievances do not properly exhaust where they are "rejected as untimely" and "that rejection [is] upheld at Steps II and III."

*Ann v. McLean*, 2018 WL 617816, at \*5 (E.D. Mich. Jan. 3, 2018).  As a result, Plaintiff did not exhaust his claims.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that Defendants' motion for summary judgment (ECF No. 18) be **GRANTED** and that the case should be dismissed.

The parties here may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Loc. 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed. R. Civ. P. 72(b)(2), Local Rule 72.1(d).

The response must specifically address each issue raised in the objections, in the

same order, and labeled as "Response to Objection No. 1," "Response to Objection

No. 2," etc.  If the Court determines that any objections lack merit, it may rule

without awaiting the response.

    Date: 7/19/2024                          s/Curtis Ivy, Jr.
                                                Curtis Ivy, Jr.
                                                United States Magistrate Judge

## CERTIFICATE OF SERVICE

    The undersigned certifies that this document was served on counsel of record and any unrepresented parties via the Court's ECF System or by First Class U.S. mail on July 19, 2024.

                                       s/Sara Krause
                                       Case Manager
                                       (810) 341-7850